STATE OF NORTH CAROLINA v. WILLIE SCOTT

No. 7114SC456

(Filed 14 July 1971)

1. **Receiving Stolen Goods § 1— proof of guilty knowledge**

In order to sustain a conviction of receiving stolen property, it must be shown that defendant knew the goods had been stolen; however, guilty knowledge need not be shown by direct proof of actual knowledge, but may be implied from evidence of circumstances surrounding the receipt of the goods.

2. **Receiving Stolen Goods § 5— guilty knowledge — sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant knew goods he received had been stolen where it showed that defendant knew the goods did not belong to the person from whom he received them, that when the goods were discovered by the police, defendant acknowledged that they had been stolen, and that defendant bought the goods for only a small fraction of their value.

3. **Receiving Stolen Goods § 5— nonfelonious receiving — variance between indictment and proof of portion of property**

In this prosecution for receiving stolen property, variance between the indictment and proof as to the ownership of part of the stolen property allegedly received by defendant was not fatal where the court submitted only the issue of nonfelonious receiving, thereby removing any issue as to the value of the property, and the evidence showed that some of the stolen property was owned by the person named in the indictment.

4. **Receiving Stolen Goods § 1— felonious receiving without regard to value of the property**

In order for the crime of receiving stolen property to be rendered a felony by G.S. 14-72(c) without regard to the value of the property, the defendant must have known not only that the property was stolen, but also that the theft was accomplished under circumstances enumerated in G.S. 14-72(b).

5. **Receiving Stolen Goods § 6— goods stolen by breaking and entering — submission of nonfelonious receiving**

The trial court did not err in submitting to the jury the issue of nonfelonious receiving where there was no evidence that defendant

knew that theft of the property had been accomplished by breaking and entering.

**6. Criminal Law § 84; Searches and Seizures § 4— search warrant for narcotics — seizure of stolen property**

Police officers lawfully seized items of stolen property where the officers were on the premises pursuant to a valid warrant to search for narcotics, the officers observed the items, which were in plain sight, and suspected they were stolen, and defendant freely acknowledged that the items were stolen prior to their seizure.

**7. Receiving Stolen Goods § 6— instructions on guilty knowledge**

In this prosecution for receiving stolen goods, the trial court erred in instructing the jury that the test of guilty knowledge is whether a reasonable man would or should have known or suspected that the goods were stolen, the test being whether defendant did know them to be stolen, either by proof of actual knowledge or because, under the circumstances, he must have known the goods were stolen.

APPEAL from *Hobgood, Judge,* 4 January 1971 Session of Superior Court held in DURHAM County.

Defendant was charged in an indictment with feloniously receiving stolen goods, consisting of one Sears turntable, one Singer portable electric typewriter, and one Zenith television set, of the value of $538.00, allegedly stolen from one Glenn Peterson.

The facts, insofar as they are material to the issues raised on this appeal, may be summarized as follows. On 29 October 1970, Officer Ronald Cooper of the Durham Police Department obtained a search warrant to search the premises described as 116 Bond Street in the City of Durham, for certain narcotic drugs believed to be in the possession of one Joyce Glenn. Officer Cooper w,ent to that location in the company of several other officers, at approximately 8:00 p.m. on 29 October 1970. The search warrant was read to Joyce Glenn, whereupon the officers commenced the search. While conducting the search, he noticed a typewriter and a turntable which he believed to be stolen because similar items were listed on the "hot sheet" (a list of stolen property which is circulated to law enforcement officers). The defendant stated that Joyce Glenn "had nothing to do with it; that he was responsible for anything in the house." Officer Cooper then advised the defendant of his rights. The defendant was prohibited from leaving the house, but was not arrested, nor was his movement within the house impeded.

The defendant pointed out to the officers certain items in the house which were stolen property. The officers seized two pistols, a hypodermic needle and syringe and approximately $3,000 worth of stolen property, including the typewriter and turntable in question. The television set has not been recovered. At the officers' request, defendant accompanied them to the police station. The following afternoon, defendant was interviewed at the police station by Detective Cameron, at which time defendant admitted having had the turntable, typewriter, and television set, but that he had given the television set to a man who was out of town. He stated that he had received the property from three members of a band called the Dorvells. Detective Cameron informed defendant that he was not charged with any offense at that time. Defendant was never formally charged until 23 November 1970, when the indictment was returned by the grand jury. The three items of property named in the indictment were stolen from an apartment in Durham which was shared by Glenn Peterson and Lamar W. Sessoms, Jr., on 26 October 1970, by one Terence Little, who gained entry to the apartment by unlocking and climbing through a window. The turntable was valued at about $199.88, and was the property of Sessoms. The television set was valued at about $159.00, and was the property of Peterson. The typewriter was valued at about $129.00, and was owned jointly by the two. Little took the items to the defendant, from whom he had purchased heroin on prior occasions, in the hope of trading them for drugs. The defendant offered $5.00 for the typewriter, $10.00 for the televison set, and $10.00 for the turntable. Little then traded the items for drugs and left. Defendant solicited and received permission from Little to tell the police or anyone else that he had received the items from Little.

The Court submitted to the jury only the offense of non-felonious receiving. From a verdict of guilty and judgment of imprisonment entered thereupon, defendant appealed to this Court.

*Attorney General Morgan, by Staff Attorney League, for the State.*

*Kenneth B. Spaulding and Norman E. Williams for defendant-appellant.*

BROCK, Judge.

I.

Defendant assigns as error the denial of his motion for judgment as of nonsuit for the reasons that (1) the evidence was insufficient for the jury to find that defendant knew the goods to have been stolen, (2) that there was a fatal variance between the indictment and the proof with regard to the ownership of the stolen property, and (3) that the facts of the case would not permit a verdict of guilty of nonfelonious receiving and that, therefore, the court having nonsuited the felony, nothing remained for the jury to consider.

[1, 2] (1) In order to sustain a conviction, it must be shown that defendant knew the goods to have been stolen. However, guilty knowledge need not be shown by direct proof of actual knowledge, as by proof that defendant witnessed the theft, or that such theft was acknowledged to him by the person from whom he received the goods; rather, such knowledge may be implied by evidence of circumstances surrounding the receipt of the goods. *State v. Miller,* 212 N.C. 361, 193 S.E. 388. The test is whether defendant knew, *or must have known,* that the goods were stolen. *State v. Oxendine,* 223 N.C. 659, 27 S.E. 2d 814. In the case at bar, it was shown that defendant knew the goods did not belong to Little at the time defendant received them from Little; that, when the goods were discovered by police, defendant acknowledged that they had been stolen; and that defendant offered Little only a small fraction of the value of the goods. It must be acknowledged that there was certain evidence which tended to negate the requisite of guilty knowledge. However, considering the evidence in the light most favorable to the State, as we must upon a motion for nonsuit, we hold that there was sufficient evidence for the jury to find that the defendant knew that the goods had been stolen.

[3] (2) The indictment charges defendant with receiving the three items in question, being the property of Glenn Peterson, and having a total value of $538.00, whereas the evidence shows that Peterson owned one of the items himself, that Sessoms owned another, and that the third was owned by Peterson and Sessoms jointly. This, contends defendant, was a fatal variance requiring nonsuit. However, there was evidence that certain of the property described in the bill of indictment was owned by

Peterson, was stolen by Little, and was received by defendant. The Court having submitted to the jury only the offense of nonfelonious receiving, thereby removing from consideration any issue as to the value of the property, defendant was not prejudiced.

**[4, 5]** (3) Defendant contends that, under G.S. 14-72(c), the crime of receiving stolen property, knowing it to be stolen, is rendered felonious in all cases in which the theft was accomplished under any of the circumstances enumerated under G.S. 14-72(b) and that, therefore, the Court having granted his motion for nonsuit as to felonious receiving, it was error to submit the misdemeanor to the jury. We think it obvious that G.S. 14-72(c) requires knowledge on the part of defendant, not only that the property was stolen, but also that such theft was within the ambit of G.S. 14-72(b). There is no evidence to show that defendant knew that the theft by Little was accomplished by breaking and entering; hence G.S. 14-72(c) has no application to this case. The Court was of the opinion that the evidence as to the value of the property was insufficient for the jury to find defendant guilty of receiving stolen property of a value in excess of $200.00, and the correctness of that determination is not before us on this appeal. The Court properly submitted to the jury the offense of nonfelonious receiving.

## II.

**[6]** Defendant assigns as error the admission of the evidence obtained during the search, upon the ground that the search and seizure were in violation of the Fourteenth Amendment to the United States Constitution. It appears from the record that the sequence of events was as follows. The officers entered the premises and read the search warrant to Joyce Glenn. During the course of the search, they noticed the turntable and typewriter and, suspecting that these might be the items listed on the "hot sheet" as stolen, asked Joyce Glenn if the items were hers. The defendant, at that point, interjected that Joyce Glenn had nothing to do with it, and that he was responsible for anything in the house. There was no conversation between the officers and the defendant prior to that time. After being advised of his rights, the defendant then pointed out to the officers a number of items as being stolen property, including the turntable and typewriter in question. It is conceded that the officers were lawfully present upon the premises, pursuant to

a valid search warrant. "Where no search is required, the constitutional guaranty is not applicable. The guaranty applies only in those instances where the seizure is assisted by a necessary search. It does not prohibit a seizure without a warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand." *State v. Simmons,* 10 N.C. App. 259, 178 S.E. 2d 90. Defendant contends that the foregoing rule has no application to this case for the reason that the typewriter and turntable, although they were in plain sight, were indistinguishable from other similar articles, that the illegality of their possession by defendant was not obvious, and that, therefore, there was no probable cause for their seizure. The stolen articles were not seized until after defendant had freely acknowledged that they were stolen and after this acknowledgment there was ample probable cause.

This assignment of error is overruled.

## III.

**[7]** Defendant assigns as error the portion of the Court's charge to the jury in which the element of guilty knowledge was defined. The relevant portion of the charge is as follows:

" . . . The Court instructs you that the existence of guilty knowledge is to be regarded as established when the circumstances surrounding the receipt of the property were such as would charge a reasonable man with notice or knowledge or would put a reasonable man upon inquiry, which, if pursued, would disclose that conclusion."

In *State v. Stathos,* 208 N.C. 456, 181 S.E. 273, an instruction of similar import was held to constitute reversible error. The test is not whether a reasonable man would or should have known or suspected that the goods had been stolen. Rather, it is whether the defendant *did* know them to be stolen, either by proof of actual knowledge or because, under the circumstances, it can be said that he must have known that the goods were stolen. See *State v. Miller* and *State v. Oxendine, supra.* We hold that the portion of the charge above quoted constitutes prejudicial error, for which defendant is entitled to a new trial.

New trial.

Judges MORRIS and HEDRICK concur.